Edith W. DOREY, Plaintiff,

v.

Francis DOREY, a/k/a Francis W. Dorey, a/k/a Francis Willard Dorey, Defendant.

No. 75–G–2024–S.

United States District Court, N. D. Alabama, S. D.

Jan. 31, 1978.

John D. Prince, Jr., Birmingham, Ala., for plaintiff.

Leo E. Costello, Birmingham, Ala., for defendant.

## MEMORANDUM OPINION

GUIN, District Judge.

On August 19, 1977, a judgment in the amount of $34,123.85, with interest thereon at the rate of six percent per annum, was entered against Francis Dorey, the defendant, by this court in a suit for the enforce-

ment of a California judgment under the full faith and credit clause of the United States Constitution. On September 21, 1977, Francis Dorey appealed the decision of this court to the United States Court of Appeals for the Fifth Circuit and filed cost bond. However, he did not file, and has not filed, supersedeas bond to obtain a stay of execution on appeal, as required by Rule 62(d) of the Federal Rules of Civil Procedure. That appeal is now pending.

On October 4, 1977, plaintiff Edith W. Dorey requested that execution issue on the judgment entered in this court, and on November 2, 1977, Edith W. Dorey moved this court for an order directing the Clerk of this court to issue a Certification of Judgment for Registration in Another District, to-wit, the United States District Court for the Northern District of Texas, Dallas Division, of the judgment entered by this court on August 19, 1977. The defendant resided before trial and continues to reside at the present time in Irving, Texas, but was a resident of this district when suit was filed and when he was served with process. The matter came on for hearing on December 2, 1977. The court having heard the motion of plaintiff and the defendant having been present by his attorney of record and having consented to registration in open court, the court entered an order directing the Clerk of this court to certify the judgment. That the attorney for the defendant did consent to the registration of the judgment in Texas is evidenced by his letter of December 28, 1977, with copy to the Clerk of this court, which the court orders made a part of the file, and another copy to be made Appendix "A" to this memorandum opinion. This court fails to see any condition to the consent. The attorney's statement in his letter as to what he said to the court is correct according to the court's memory. The court interprets the statement, however, as a consent to the registration of the judgment in Texas and an opposition to the motion to require answers to interrogatories. As Mr. Costello says in his letter, oral argument was heard only on the motion to require answers to interrogatories. The matter of the registration of the judgment was never mentioned again, as he says, because he had consented to it. The court interprets the letter as an attempt to withdraw the consent, which comes too late.

Nevertheless, even without the consent of the defendant, the court is of the opinion that the judgment may be registered and enforced in the Northern District of Texas, the present district of residence of the defendant. The court has previously ordered that this be done, an order which did not require findings of fact or conclusions of law, or a memorandum opinion, but the court, because of the novelty of the problem, and its importance, is supplying its memorandum opinion for the guidance of the court officials and of any other judge or court who may be called upon to rule upon the propriety of this court's action in so ordering the judgment to be registered in Texas.

Title 28, United States Code, Section 1963, declares:

A judgment in an action for the recovery of money or property now or hereafter entered in any district court which has become final by appeal or expiration of time for appeal may be registered in any other district by filing therein a certified copy of such judgment. A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.

This court is of the opinion that the foregoing statute would be unconstitutional if construed to prevent certification of judgments in cases such as this. It would prevent registration of a judgment in another district while an appeal from such judgment is pending, though no supersedeas bond has been posted.

■ It is the intent of the law to grant citizens the privilege to collect any final money judgment, unless stayed. When an appeal from a judgment has been taken, the law further provides that any execution on the judgment can be stayed, pursuant to Federal Rule of Civil Procedure 62, or Federal Rule of Appellate Procedure 8, usually

by the posting of a supersedeas bond in an appropriate amount. Where no such bond has been posted, nor a stay otherwise granted, execution can issue. For the law to operate otherwise would violate the constitutional rights of all judgment creditors, for this is a traditional historical right which this court considers to be one of the privileges of a citizen of the United States, guaranteed by Article IV, Section 2, of the Constitution.

If the defendant had continued to reside in Alabama, there would be no problem. It is the fact that he moved to Texas after he was served with process in this case which creates the problem pursuant to 28 U.S.C. § 1963.

█ It is the opinion of this court that it is still a constitutional right of a judgment creditor, when no stay has been issued pursuant to law, to collect his judgment. This must be true regardless whether the judgment debtor moves his residence, whether before or after judgment. The judgment debtor was a resident of this state (and district) when he was sued and served, and no question as to the validity of that service has been raised. This court clearly had personal jurisdiction of the defendant. The question is whether the defendant can obtain a super-right as compared with residents of this district by changing his residence to another district. If he had remained a resident of this district, he would be subject to levy of execution on the judgment, since it has not been superseded or otherwise stayed. His wages would be subject to garnishment. His other property would be subject to legal process. Read literally, 28 U.S.C. § 1963 would appear to give the resident of another district a right which a resident of this district does not have—a right to escape execution without superseding or otherwise obtaining a stay of the judgment. There is no rational ground for making such a distinction. This case is on appeal, but there has been no supersedeas bond filed nor other stay granted. Is it reasonably to be assumed that the law would prevent the judgment creditor from executing on his judgment simply be-

cause the judgment debtor has changed his residence to another district? This court thinks not. To so hold would, in fact, give more rights to a resident of a foreign district than to one of this district. To so construe the statute would clearly create a disparity in rights that would constitute a denial of the equal protection of the laws to residents of the judgment district. Those who live here and suffer judgments here must pay those judgments, or at least remain subject to execution on them, if they do not supersede them while the case is on appeal, or otherwise obtain a stay. Nonresidents of the district, on the other hand, can postpone the effect of the judgment without a supersedeas bond or otherwise obtaining a stay simply by appealing the case, even in bad faith. The chief judge of this circuit has publicly stated that the average delay on appeals in nonpriority cases (this is a nonpriority case) is on the order of three years. To allow this defendant to obtain an automatic stay by simply moving across the district line would amount to an injustice of such enormity as to offend the conscience of this court. In the opinion of this court this could not have been the intention of the Congress when it enacted Section 1963.

█ To avoid the peculiar result contended for by the defendant and his counsel, this court must either construe the statute as assuming an appeal with supersedeas (or other appropriate stay), or else declare the statute unconstitutional. As will be discussed below, there are more reasons for questioning the constitutionality of the statute than have previously been mentioned, unless it is interpreted in such a way as to make it constitutional.

This court believes that the statute should be interpreted *in pari materia* with F.R.C.P. 62, and that the statute must be read as assuming an appeal with supersedeas. The statute does not by its terms purport to grant a stay. It simply applies to the registration from the judgment. Both F.R.C.P. 62 and F.R.A.P. 8 provide for stays. The appellate rule has no reference to supersedeas, which is the only automatic stay provided for by either rule. F.R.C.P.

62 was last readopted in 1961 and F.R.A.P. 8 was adopted December 4, 1974, both dates later than the date of last readoption of Section 1963. F.R.C.P. 62 and F.R.A.P. 8 would therefore control if there is any conflict between the statute and the rules. Since F.R.C.P. 62 provides that automatic stay can be obtained *only* by filing a supersedeas bond (not contradicted by F.R.A.P. 8), this provision controls over any implication of the statute that a mere appeal by a nonresident of the district will work an automatic stay. In other words, the statute is to be construed as assuming a supersedeas or other stay when it denies registration in a foreign district pending appeal. To hold otherwise would allow the perpetration of fraud not only upon the judgment creditor but upon this court as well.

█ It was the decision of this court, dated August 19, 1977, that the California judgment sued upon was just and regular and should be enforced under the full faith and credit clause of the Constitution of the United States, that the defendant had evaded, and now appears to be attempting to continue to evade his legal responsibilities pursuant to the California judgment which this court's judgment ordered enforced. The defendant is doing this without seeking a stay under F.R.C.P. 62 or F.R.A.P. 8 and without filing a supersedeas bond. This court is of the opinion that its decision of August 19, 1977, was so plainly correct that the appeal is frivolous and no more than a delaying tactic, and this is another reason why in equity and in good conscience the defendant should not be allowed to abuse Section 1963 by changing his residence and attempting to use the judgment registration statute to obtain an automatic stay, which this court holds was never the intent of the Congress.

Only one decision appears in the books squarely interpreting Section 1963, *Abegglen v. Burnham,* 94 F.Supp. 484 (D.Utah 1950). The decision is not valuable. It is essentially based upon a construction of the words of the statute and does not consider the constitutional questions nor any questions of equity or good conscience. The opinion does not indicate that there was anything extraordinary about the facts, in the sense that delay might make the judgment uncollectible or more difficult to collect, nor that it was anything other than a simple money judgment against a solvent defendant. Here, we have a money judgment for alimony granted in the first instance by a court of equity in California, a history of the defendant attempting to hide for many years from the plaintiff, to evade his just and lawful obligation under the California judgment, and his apparently continuing to do so (it is to be noted that he has moved to a state which has many more personal exemptions against execution than does Alabama). The record is full of evidence of a scarcity of assets against which execution can be had, with the only probable source of satisfaction of the judgment being the defendant's salary, which is above $20,000.00 per year. The amount of the judgment is well over $30,000.00. A delay of three years, which is probable, without the right of the plaintiff to garnish the defendant's wages will for all practical purposes withdraw from the effect of this judgment many thousands of dollars which would otherwise be within its reach. The judgment not having been superseded, under these circumstances the effect is at least a constructive fraud on the plaintiff and on this court. That Congress ever intended such a result is inconceivable.

The judgment is final in the sense that it can be collected even though it is on appeal, if there is no stay by supersedeas or otherwise. This judgment is plainly collectible out of any assets this defendant has in this district. That Congress intended the judgment to be as collectible in another district as in this one is made plain by the concluding sentence of the first paragraph (quoted above) of Section 1963. The choice of words for the first sentence of said paragraph is unfortunate. However, this court will interpret the section according to the intent of Congress which was to make the judgment subject to registration and collection in any other district as fully as in the district of judgment. The Congress obviously assumed an appeal with supersedeas

in choosing the words used in the first sentence of the section.

To construe the statute otherwise would cause the statute to run afoul of the following principles, constitutional or otherwise:

1. The statute would violate the privileges and immunities clause of the Constitution (Article IV, Section 2), as discussed above.

2. The statute would deprive the citizens of this district of their equal protection of the laws by giving citizens of other districts a superior right to evade or postpone the payment of their judgment debts, as discussed above.

3. Unless Section 1963 is thus interpreted, it is purely an arbitrary and capricious enactment and deprives this plaintiff of her property without due process of law.

4. Unless so interpreted, the statute would constitute an encroachment upon the judicial power by the legislative branch by depriving a final and fully enforceable judgment of a United States District Court of its power outside the limited geographical area of the district within which the judgment was obtained, obviously an unreasonable and arbitrary result. While this argument is closely related to the due process argument, it is not the same. The doctrine of separation of powers is a distinctly different and equally cogent constitutional doctrine. If the judicial branch of the United States Government has the right to issue binding judgments, as it must if it has any power at all, that power cannot be so stringently restricted as would be the result of a literal reading of the words of this statute without taking into consideration what must have been the reasonable intent of the Congress.

5. As mentioned above, F.R.C.P. 62 was readopted after the last readoption of Section 1963. The policy of F.R.C.P. 62 is to permit an automatic stay only upon filing of a supersedeas bond. F.R.A.P. 8 makes no provision for automatic stay. If Section 1963 is not construed as this court construes it, it would automatically work a stay for the benefit of a nonresident of the district, which is contrary to the policy of F.R.C.P. 62 and F.R.A.P. 8. The latter statement of principle prevails over the earlier, and the principle of the rules must therefore be read into the statute. The same result follows if Section 1963, F.R.C.P. 62 and F.R.A.P. 8 are simply read *in pari materia.*

6. Not only would a different interpretation of the statute permit wholesale fraud on the federal courts of the nation, it would absolutely invite such. This is another argument that the intent of Congress was as is held herein. A different interpretation would be an open invitation to appeals for the purpose of delay only (a species of fraud on the courts), which would further burden our already heavily overworked appellate courts. This could not have been the intent of Congress, either to permit or to encourage such.

Historically, courts of equity have been clothed with extraordinary powers to redress and prevent fraud, especially frauds upon the courts. To interpret the statute in such a way as to permit such a fraud upon the judicial power is certainly an intrusion into that power which the legislative branch has not the constitutional right to commit, and therefore this court will hold that the Congress did not have any such intention. This is a reasonable inference from all the circumstances, and it is the interpretation of the statute which will save the statute.

7. To interpret the statute otherwise than interpreted herein would result in a statute which denies that which the Constitution preserves to the state courts—full faith and credit to be accorded to their judgments. This is a diversity case. Surely it was not the intention of Congress that a federal court sitting in a diversity case, exercising federal jurisdiction to decide a ques-

tion under state law, would have its judgment accorded less than the full faith and credit which the Constitution guarantees to the judgment of a state court. In such a case, the federal court sits as a substitute for a state court. If this judgment had been entered by a state court, and if the case were on appeal, without a supersedeas bond, the judgment would be entitled to full faith and credit in foreign states and could be sued upon and enforced in foreign states. If the statute means that the judgments of federal courts in diversity cases are not to be accorded the same full faith and credit as the judgments of state courts, then this is an unconstitutional diminution, or attempt at diminution, of the judicial power. Again, this is too absurd a result for it to have been intended by Congress, and is just one more reason for the court's decision in this case to interpret the statute as it has. It just stands to reason as a matter of common sense that this court's judgment in a diversity case must have as much effect as a state court judgment would have.

Section 1963 is a summary substitute for a suit in a foreign district on a federal judgment. Beyond question, this plaintiff can sue in Texas, in either federal or state court, on the judgment in question, and obtain an enforceable Texas judgment—but only after delay and expense which the Congress intended to avoid by establishing the summary procedure. Can there be any rational argument that Congress intended that this plaintiff *could* sue on her judgment in Texas but *could not* by registering it have summary enforcement of a judgment in a case already fully litigated? This court thinks not. Congress surely intended this procedure to aid in the collection of judgments from debtors who are all too willing to move from district to district, and state to state, and to disappear for long periods of time to avoid their judgment debts, as this judgment debtor has done. Congress did not mean Section 1963 to be a frustration rather than an aid.

This court has enumerated a long list of reasons why its previous order to the Clerk was efficaciously entered. Whether that order is rested upon consent or upon one of the several other reasons enumerated herein, any one of those reasons is sufficient to support it. The order directed the Clerk of this court to forthwith issue certification of judgment for registration in another district of the judgment entered by this court on August 19, 1977. Since the order was soundly grounded, this court holds again that it was efficaciously entered and declines to withdraw it.

APPENDIX "A"

LEO E. COSTELLO
ATTORNEY AT LAW
3716 SOUTH 5TH AVENUE
BIRMINGHAM, ALABAMA 35222
205–252–9946

LEO E. COSTELLO
JAMES C. PINO

December 28, 1977

Judge J. Foy Guin
Federal Courthouse
Birmingham, Alabama 35203

Re: Dorey vs. Dorey

Dear Judge Guin:

When the matter of the registration of the judgment in this case and the propriety of the interrogatories was brought up in your court, John Prince said words to the effect "We are here on my motion to register the judgment in Texas"—I responded "Oh, if that's all we are here on, we will let him record his judgment—I thought we were here on the motion to require answers to

APPENDIX "A"—Continued

interrogatories." Mr. Prince then said "Oh, we are here on *that* too." Oral argument was then heard on the motion to require answers to interrogatories, but the matter of the recording of the judgment was never mentioned again. When Mr. Prince drafted the decree, he said that the recording of the judgment was by consent but did not mention that the consent was conditioned. Frank Dorey certainly opposes the recording of the judgment in Texas while this matter is on appeal. I called your law clerk when the error was discovered and discussed it with him because I originally mis-read the order and thought that Mr. Prince had made the whole thing "by consent" (including the interrogatories).

The purpose of this letter is merely to clarify the matter, that is, Frank Dorey *does* oppose the registration of the judgment as being contrary to 28 USCA.

Yours very truly,

/s/ Leo E. Costello

Leo E. Costello (BS)

LEC:ts

cc: James Vandergriff, Clerk