699 F.2d 539
 226 U.S.App.D.C. 1
 In re PROFESSIONAL AIR TRAFFIC CONTROLLERS ORGANIZATION (PATCO).
AIR TRANSPORT ASSOCIATION OF AMERICA, Appellant,
v.
PROFESSIONAL AIR TRAFFIC CONTROLLERS ORGANIZATION (PATCO), et al.
 No. 82-1445.
 United States Court of Appeals,
District of Columbia Circuit.
 Argued Dec. 6, 1982.
Decided Jan. 21, 1983.
 
 Mitchell J. Notis and James R. Rosa, Washington, D.C., were on the brief, for appellee, John Dwyer.
 Robert O. Tyler, Washington, D.C., entered an appearance for appellee, Tyler, Trustee in Bankruptcy.
 Allen R. Snyder, Washington, D.C., with whom George U. Carneal, Howard R. Moskof, and David A. Kikel, Washington, D.C., were on the brief for appellant.
 Richard J. Leighton, Washington, D.C., for appellee, Professional Air Traffic Controllers Organization.
 Angelo V. Arcadipane, Washington, D.C., for appellees, Dist. No. 1--Pacific Coast Dist., et al.
 Before GINSBURG and SCALIA, Circuit Judges, and McGOWAN, Senior Circuit Judge.
 Opinion for the Court filed by Circuit Judge GINSBURG.
 GINSBURG, Circuit Judge:
 
 
 1
 This is an appeal from an order of the United States Bankruptcy Court for the District of Columbia vacating the registration of three civil contempt judgments and quashing writs of attachment issued pursuant to the registration. 18 B.R. 894. The case involves the federal judgment registration statute, 28 U.S.C. Sec. 1963, and presents a timing question: When does a judgment for the recovery of money entered in one federal district court become registrable in other federal district courts?
 
 
 2
 The judgments in question, totaling $4.5 million, were rendered in the United States District Court for the Eastern District of New York. They run in favor of the appellant here, Air Transport Association of America (ATA) and against appellee Professional Air Traffic Controllers Organization (PATCO). ATA is a trade association representing the nation's major scheduled air carriers; PATCO is the labor organization that represented air traffic controllers formerly employed by the Federal Aviation Administration. Most of PATCO's assets are located in the District of Columbia.
 
 
 3
 ATA registered the Eastern District of New York judgments, by filing certified copies with the clerk, in the United States District Court for the District of Columbia. The registration occurred one day after entry of the last of the three judgments. Thereafter, ATA moved for execution of District of Columbia writs of attachment it had secured and delivered to the United States Marshal the day it registered the Eastern District of New York judgments. PATCO moved to vacate the registration as premature, citing the timely notice of appeal to the Second Circuit PATCO had filed from the Eastern District of New York judgments. While these cross-motions were pending, PATCO became a bankrupt.[1] ATA thereupon removed the proceeding from the district court for the District of Columbia to the Bankruptcy Court. Bankr.D.C.R. X-1004.
 
 
 4
 The bankruptcy judge, ruling in favor of PATCO, held that under the federal judgment registration statute, 28 U.S.C. Sec. 1963, registration must await expiration of the time for appeal or, if a timely notice of appeal is filed, final disposition of the appeal. As an additional holding, the bankruptcy judge declared the registration ineffective because it antedated expiration of the automatic ten-day stay of judgment specified in Rule 62(a) of the Federal Rules of Civil Procedure.[2] At stake for ATA in this appeal from the bankruptcy judge's decision is the position it will occupy in the line of PATCO's creditors. If the registration is effective, ATA will have the status of a secured judgment creditor. If it is ineffective, ATA will stand with several others as a general unsecured creditor.[3]
 
 
 5
 For the reasons stated below, we conclude that the bankruptcy judge correctly read 28 U.S.C. Sec. 1963 to preclude registration of the Eastern District of New York judgments in other federal district courts until final disposition of PATCO's appeal to the Second Circuit. On that ground, and pretermitting the Rule 62(a) question,[4] we affirm the order vacating the registration and quashing the writs of attachment.
 
 BACKGROUND
 
 6
 In 1970, in response to an ATA suit brought to stop a "sick-out" by air traffic controllers, the District Court for the Eastern District of New York permanently enjoined PATCO from engaging in strikes and ordered PATCO to pay ATA $25,000 per day should it violate the injunction. ATA v. PATCO, partially reported, 313 F.Supp. 181 (E.D.N.Y.), reversed in part sub nom. United States v. PATCO, 438 F.2d 79 (2d Cir.1970), cert. denied, 402 U.S. 915, 91 S.Ct. 1373, 28 L.Ed.2d 661 (1971). On August 3, 1981, PATCO called on its members to strike.[5] That same day the District Court for the Eastern District of New York issued an order to PATCO to show cause why it was not in violation of the 1970 permanent injunction.
 
 
 7
 On August 4, 1981, the District Court for the Eastern District of New York held PATCO in contempt for engaging in a strike on August 3 in violation of the 1970 injunction and ordered PATCO to pay ATA $25,000. The court further ordered PATCO to pay ATA $100,000 for each hour the strike continued, until PATCO's president could certify that the PATCO Executive Board had formally ordered termination of the strike. Follow-up contempt judgments were entered on August 5 and 6, 1981, as the strike continued.
 
 
 8
 The Clerk of the District Court for the Eastern District of New York certified the three contempt judgments on August 6. The monetary awards to ATA against PATCO for contempt of the 1970 anti-strike injunction then totaled $4.5 million: $100,000 for the August 3, 4, 5, and 6 violations of the 1970 permanent injunction at $25,000 per day; and $4.4 million for the $100,000 per hour toll imposed on August 4.[6]
 
 
 9
 On August 7, 1981, ATA registered the August 4, 5, and 6 Eastern District of New York civil contempt judgments in the District Court for the District of Columbia, and obtained writs of attachment against described assets alleged to belong to PATCO.[7] As specified by 28 U.S.C. Sec. 1963, ATA simply filed the certified judgments in the District Court for the District of Columbia. No judge participated in the registration or attachment authorization. On the same day, August 7, the District Court for the Eastern District of New York ceased the imposition of civil contempt fines because the PATCO Executive Board could no longer terminate the strike; the Board's power to do so had been overtaken by the government's firing of all striking air traffic controllers, pursuant to presidential command. See United States v. PATCO, 524 F.Supp. 160, 164 (D.D.C.1981) ("When an employer has terminated employees and has stated that it will not permit them to return to work, there is, by definition, no longer a strike, for under such circumstances the employees cannot return to work, even if they are of a mind to do so.").
 
 
 10
 On August 21, 1981, PATCO, without posting a supersedeas bond or otherwise attempting to stay the execution of the civil contempt judgments, filed a timely notice of appeal to the Second Circuit from the August 4, 5, and 6 Eastern District of New York adjudications. ATA, on September 11, 1981, moved to execute the Eastern District of New York judgments in the District of Columbia; PATCO, on September 15, 1981, moved to vacate ATA's registration of those judgments as premature because of the pending appeal to the Second Circuit. On November 25, 1981, over ninety days after ATA registered its three civil contempt money judgments,[8] PATCO filed a Chapter 11 bankruptcy petition.[9] Less than four weeks later, on December 18, 1981, the Second Circuit affirmed the Eastern District of New York's contempt judgments. ATA v. PATCO, 667 F.2d 316 (2d Cir.1981). The Second Circuit's mandate issued on January 28, 1982. ATA and PATCO filed cross-motions for summary judgment in the Bankruptcy Court[10] and on March 23, 1982, that court granted PATCO's motion to vacate ATA's registration. On April 14, 1982, the parties agreed to a direct appeal to this court. See Act of November 6, 1978, Pub.L. No. 95-598, Sec. 405(c)(1)(B), 92 Stat. 2549, 2685 (1978) (currently reported in note preceding 28 U.S.C. Sec. 1471).
 
 DECISION
 
 11
 The federal judgment registration statute, 28 U.S.C. Sec. 1963, provides in relevant part:
 
 
 12
 A judgment in an action for the recovery of money or property now or hereafter entered in any district court which has become final by appeal or expiration of time for appeal may be registered in any other district by filing therein a certified copy of such judgment. A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner.
 
 
 13
 As earlier stated, ATA registered the three Eastern District of New York civil contempt money judgments in the District Court for the District of Columbia on August 7, 1981, one day after the last of the three judgments was entered, and some four weeks before expiration of the time for noticing an appeal from the judgments.[11] PATCO in fact filed a timely notice of appeal on August 21, 1981, and the Second Circuit decided that appeal, in ATA's favor, on December 18, 1981. The Second Circuit's mandate issued on January 28, 1982. According the words "final by appeal" their "ordinary, usual, and natural interpretation,"[12] therefore, ATA's Eastern District of New York judgments did not become registrable "in any other district" until January 28, 1982, the date of the Second Circuit's mandate.[13]
 
 
 14
 ATA emphasizes, however, that its contempt judgments became enforceable in the rendering forum, the Eastern District of New York, instantly.[14] Under Rule 62(d), (g) of the Federal Rules of Civil Procedure, and Rule 8 of the Federal Rules of Appellate Procedure, enforcement in the Eastern District pending appeal to the Second Circuit could have been blocked only by filing a supersedeas bond or by court order. PATCO did not file a bond, nor did it obtain a court-ordered stay. It would be irrational, ATA argues, for a federal judgment collectible where rendered to remain uncollectible in other federal districts. Accordingly, ATA urges, 28 U.S.C. Sec. 1963 should be read "in pari materia" with Civil Rule 62 and Appellate Rule 8.[15] So read, ATA concludes, registration could be withheld pending final disposition on appeal or expiration of time for appeal only when enforcement in the rendering forum has been stayed. Concededly, in the matter before us, stay of enforcement in the rendering forum did not occur.
 
 
 15
 Urban Industries, Inc. v. Thevis, 670 F.2d 981, 984-85 (11th Cir.1982), a decision directly in point,[16] considered and rejected the position ATA presents.[17] We are persuaded by the analysis in Urban Industries and apply the same reasoning to this similar case.
 
 
 16
 "We begin with the familiar canon of statutory construction that the starting point for interpreting a statute is the language of the statute itself. Absent a clearly expressed legislative intention to the contrary, that language must ordinarily be regarded as conclusive." Consumer Product Safety Commission v. GTE Sylvania, Inc., 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). The language of 28 U.S.C. Sec. 1963 is not ambiguous. Expiration of time for appeal or final disposition by appeal triggers registration. We find no "clearly expressed legislative intention" running counter to the statute's plain meaning. As the bankruptcy judge noted, RE 21 n. 13, the slim history of section 1963 is silent on the question presented here. See Ohio Hoist Manufacturing Co. v. LiRocchi, 490 F.2d 105, 108-09 (6th Cir.) (appendix summarizing legislative history), cert. dismissed, 417 U.S. 938, 94 S.Ct. 2654, 41 L.Ed.2d 661 (1974). However, we can readily identify a sensible basis for withholding registration until the judgment in question is no longer subject to reversal or modification on appeal.
 
 
 17
 Registration is a rapid procedure that does not require the intervention of a judge. It "is merely a matter of having the clerk of the court [in which the judgment is registered] enter the pertinent provisions of the ... [sister court's] judgment on the judgment docket." Note, Registration of Federal Judgments, 42 Iowa L.Rev. 285, 288-89 (1957). It is an alternative that judgment creditors may use when the statute's terms are met. But registration does not displace the traditional route to enforcement of a judgment outside the territorial limits of the court in which the judgment was rendered:
 
 
 18
 Section 1963 provides a cumulative remedy. It does not prevent a judgment creditor from bringing an independent action on his judgment. And it may be advantageous for him to do this where the original judgment is not registrable due to the fact that it has not become final by appeal or expiration of the time for appeal.
 
 
 19
 7B J. Moore, Moore's Federal Practice Sec. 1963 (2d ed. 1982); see Meridian Investing & Development Corp. v. Suncoast Highland Corp., 628 F.2d 370, 373 n. 5 (5th Cir.1980).
 
 
 20
 While an independent action on a judgment may be commenced in the face of a pending appeal, the judgment debtor has a more ample opportunity to raise defenses in that setting than in a registration proceeding. See Urban Industries, supra, 670 F.2d at 985. Of particular significance to the statutory interpretation question before us, the judge in the independent action may exercise discretion to stay that action because of an appeal from the judgment for which enforcement is sought.[18]
 
 
 21
 Since a judge empowered to exercise discretion is not on the scene when a judgment is registered, it appears entirely reasonable to defer the process until the risk of reversal or alteration on appeal has passed.[19] The deferral avoids the complicated unravelling[20] that might become necessary if a judgment, post recognition and enforcement outside the rendering forum, is overturned on direct review.[21]
 
 
 22
 Congress authorized registration only for a judgment "which has become final by appeal or expiration of time for appeal."[22] In line with the Eleventh Circuit in Urban Industries, supra, we accord the quoted words their plain meaning. The federal judgment registration statute, so construed, reserves rapid-track enforcement for judgments most amenable to that treatment, judgments no longer subject to appeal; it leaves to the traditional mode, the independent action, enforcement of judgments still open to reversal or modification on appeal. This arrangement is reasonable and not in conflict with any discernible legislative intent.
 
 CONCLUSION
 
 23
 The bankruptcy judge correctly held that ATA's registration of the civil contempt judgments against PATCO prior to the time they became "final by appeal" was without force and effect. The order vacating the registration and quashing all writs of attachment issued pursuant to the registration is accordingly
 
 
 24
 Affirmed.
 
 
 
 [1]
 PATCO filed a Chapter 11 petition on November 25, 1981. On July 6, 1982, on PATCO's motion, the bankruptcy judge ordered the case converted from a Chapter 11 reorganization to a Chapter 7 liquidation
 
 
 [2]
 Rule 62(a) provides:
 Except as stated herein, no execution shall issue upon a judgment nor shall proceedings be taken for its enforcement until the expiration of 10 days after its entry. Unless otherwise ordered by the court, an interlocutory or final judgment in an action for an injunction ... shall not be stayed during the period after its entry and until an appeal is taken or during the pendency of an appeal. The provisions of subdivision (c) of this rule govern the suspending, modifying, restoring, or granting of an injunction during the pendency of an appeal.
 ATA argued that the civil contempt judgments it registered were entered in "an action for an injunction," and are therefore expressly excluded from the ambit of Rule 62(a)'s automatic 10-day stay. Alternately, ATA urged that coercive civil contempt judgments are implicitly excluded from the Rule's automatic stay provision.
 
 
 [3]
 A trustee may avoid a transfer of the debtor's property made "within 90 days before the date of the filing of the [bankruptcy] petition." 11 U.S.C. Sec. 547(b). ATA registered the Eastern District of New York civil contempt judgments, and secured writs of attachment, on August 7, 1981, outside the 90-day avoidance period, which, in this case, commenced on August 27, 1981. If the registration and attachments were effective on the August 27, 1981, cutoff date, ATA would not have obtained a "preference" subject to avoidance by the trustee
 Unsecured creditors who intervened in this suit include: District Number 1--Pacific Coast District, Marine Engineers' Beneficial Association (MEBA), a sister union to PATCO; the MEBA Pension Trust, a jointly trusteed labor-management pension trust covering licensed marine engineers and certain persons employed by PATCO; MEBAR Realty Trust, a separate entity formed by the MEBA Pension Trust to manage an office building owned by the Pension Trust; John Dwyer, an air traffic controller; and Domenic Torchia, trustee of the PATCO Political Action Committee. MEBA's counsel represented to the panel at oral argument that PATCO owed MEBA approximately $400,000 for loans made on the eve of the PATCO strike. The MEBA Pension Trust's claim asserts contributions owed by PATCO on behalf of PATCO's covered employees. PATCO owes the MEBAR Realty Trust rent for office space occupied in the Pension Trust's office building. Dwyer claims that, as an individual air traffic controller, he has an equitable ownership interest in the PATCO National Controllers Subsistence Fund. Torchia alleges that he represents the interests of the beneficiaries of the PATCO Political Action Committee. The Professional Airways Systems Specialists (PASS), a sister union to PATCO, also intervened as a garnishee. ATA had served a writ of attachment on PASS, based on PASS's debt to PATCO of approximately $65,000 for services rendered.
 
 
 [4]
 The district judge in the Eastern District of New York ruled from the bench that Rule 62(a)'s automatic 10-day stay "was inapplicable in contempt proceedings." Record Excerpts (RE) 29. The bankruptcy judge here reached the opposite conclusion. RE 9-19. Because we find in 28 U.S.C. Sec. 1963 sufficient reason to affirm the bankruptcy judge's order, we do not address the issue whether the judgments ATA registered were automatically stayed for 10 days. We note, however, that even if Rule 62(a)'s 10-day stay governed, it does not necessarily follow that ATA would have missed secured judgment creditor status on that account. The last of the three civil contempt judgments was entered in the Eastern District of New York on August 6, 1981. ATA registered the three judgments in the District Court for the District of Columbia the next day, August 7, 1981. A 10-day stay would have blocked enforcement proceedings until August 16, 1981, a date outside the 90-day preference avoidance period. See supra note 3. Assuming application of the 10-day stay, therefore, it is arguable that ATA's August 7, 1981, registration might have been deemed effective August 16, 1981, eleven days short of the August 27, 1981, date when transfers of property became vulnerable to avoidance by the trustee
 
 
 [5]
 For a review of the events surrounding the PATCO strike, see PATCO v. Federal Labor Relations Auth., 685 F.2d 547, 551-52 (D.C.Cir.1982)
 
 
 [6]
 In addition to the contempt judgments, on December 7, 1981, the Eastern District of New York awarded 14 named airline plaintiffs nearly $29 million for damages caused by PATCO's strike. See RE 44-46. Individual airlines subsequently assigned to ATA over $27 million of the December 7 compensatory damage awards. Combining the $4.5 million civil contempt judgments with the over $27 million compensatory damage awards, PATCO owes ATA over $31 million. According to ATA, the sum of these judgments gives it approximately 90% of the total outstanding creditors' claims against PATCO. See Reply Brief for Appellant 8 n. *
 
 
 [7]
 Ownership of some of the assets listed in the writs of attachment is disputed. At the time of oral argument, the size of PATCO's estate had not been established; estimates advanced by the parties ranged from $300,000 to $5.5 million. Recently, the bankruptcy court ruled that one of the assets as to which ownership was disputed, the "Controller Benefit Fund," was part of PATCO's estate. In re PATCO, ATA v. PATCO, 26 B.R. 337 (Bkrtcy.D.C.1982)
 
 
 [8]
 For the significance of this time sequence, see supra note 3
 
 
 [9]
 See supra note 1
 
 
 [10]
 On December 24, 1981, in view of PATCO's bankruptcy petition, the pending action in the United States District Court for the District of Columbia was removed to the United States Bankruptcy Court for the District of Columbia. Bankr.D.C. R. X-1004
 
 
 [11]
 Rule 4(a) of the Federal Rules of Appellate Procedure directs that the notice of appeal from a district court to a court of appeals "shall be filed with the clerk of the district court within 30 days after the date of entry of the judgment or order appealed from."
 
 
 [12]
 Abegglen v. Burnham, 94 F.Supp. 484, 486 (D.Utah 1950), quoted with approval in Urban Indus., Inc. v. Thevis, 670 F.2d 981, 984 (11th Cir.1982)
 
 
 [13]
 Any transfer of PATCO's property on or after August 27, 1981, could have been avoided by the bankruptcy trustee. See supra notes 1 & 3
 
 
 [14]
 As earlier noted, see supra note 4, the district judge in the Eastern District of New York considered Rule 62(a)'s automatic 10-day stay inapplicable
 
 
 [15]
 Brief for Appellant 24
 
 
 [16]
 The only other court of appeals decision on point, a Fourth Circuit 2-1 opinion accepting an argument resembling ATA's, has been withdrawn. Kaplan v. Hirsch, No. 81-1789 (4th Cir. May 27, 1982) (order withdrawing panel and dissenting opinions, dismissing appeal as moot, and noting panel opinion had already been vacated upon the grant of a petition for rehearing en banc)
 
 
 [17]
 In the process, the Eleventh Circuit disapproved the decision on which ATA placed principal reliance in its opening brief, Dorey v. Dorey, 77 F.R.D. 721 (N.D.Ala.1978). Dorey suggested that equal protection infirmities might doom the federal judgment registration statute if it were read to yield different treatment of judgment debtors and creditors depending upon the location, within the United States, of the judgment debtor's assets. The Urban Industries court thought the Dorey court's constitutional concerns unwarranted, 670 F.2d at 984-85, and ATA, in this case, raises no constitutional challenge to the interpretation of 28 U.S.C. Sec. 1963 advanced by appellees and adopted by the bankruptcy judge
 
 
 [18]
 Cf. Restatement (Second) of Conflict of Laws Sec. 107 comment e (1971) ("If, by the local law of the state of rendition, [an] appeal does not vacate the judgment, action will lie on the judgment in another state. Usually, however, the courts of the state in which enforcement of the judgment is sought will either stay their judgment, or stay execution thereof, pending the determination of the appeal."); id. Sec. 112 comment b (same). See also Restatement (Second) of Judgments Sec. 16 comment b (1982) (court asked to accord a judgment preclusive effect may be well-advised to stay its own proceedings to await the ultimate disposition of the judgment on appeal)
 
 
 [19]
 ATA cites Stanford v. Utley, 341 F.2d 265 (8th Cir.1965), in support of its position that a judgment may be registered under 28 U.S.C. Sec. 1963 prior to the expiration of the time to appeal. Defendants in Stanford had consented to the entry of a default judgment, and thereby waived their right to appeal. Under these special circumstances, the court held the judgment registrable immediately: "It follows that, with no right in the defendants to appeal, the ... judgment ... upon its entry became final as to them by 'expiration of time for appeal' within the meaning of Sec. 1963." Id. at 271. This common sense alignment of a judgment never amenable to appeal with a judgment no longer amenable to appeal does not aid ATA's case
 
 
 [20]
 See Restatement (Second) of Judgments, supra note 18, Sec. 16 ("A judgment based on an earlier judgment is not nullified automatically by reason of the setting aside, or reversal on appeal, or other nullification of that earlier judgment; but the later judgment may be set aside, in appropriate proceedings, with provision for any suitable restitution of benefits received under it.")
 
 
 [21]
 A judgment against PATCO contemporaneous with ATA's judgments is illustrative. Taso Anthan obtained an $815,000 judgment against PATCO in the United States District Court for the Eastern District of Missouri on August 10, 1981, just four days after entry of the third of ATA's judgments in the Eastern District of New York. On September 15, 1981, the Clerk of the District Court for the District of Columbia refused to register Anthan's judgment because an appeal was pending. Anthan petitioned for a writ of mandamus to compel the Clerk to register the judgment. On December 1, 1981, the district court denied the petition. Anthan v. Davey, Misc. No. 81-0229 (D.D.C. Dec. 1, 1981). Thereafter, the Eighth Circuit reversed Anthan's Eastern District of Missouri judgment. Anthan v. PATCO, 672 F.2d 706 (8th Cir.1982)
 
 
 [22]
 Congress might have written a statute making a judgment registrable, and thereby immediately enforceable in all federal district courts, at the time it becomes collectible in the rendering forum. Cf. Uniform Enforcement of Foreign Judgments Act (1964 Revised Act) Secs. 2, 4, 13 U.L.A. 174, 177, 185 (1980) (conditioning stay of enforcement in second forum, pending appeal in first forum, upon furnishing security for satisfaction of the judgment). But cf. Uniform Foreign Money-Judgments Recognition Act (1962) Sec. 6, 13 U.L.A. 419, 427 (1980) (court in which recognition is sought may stay proceedings until appeal from foreign judgment has been determined or until expiration of a period of time sufficient to enable the defendant to prosecute the appeal)